UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT M. LEE,<br>          Petitioner,<br><br>          v.<br><br>MICHAEL CORSINI,<br>          Respondent. | )<br>)<br>)<br>)    C.A. No. 07-11316-MLW<br>)<br>)<br>) |

MEMORANDUM AND ORDER

WOLF, D.J.                                          December 24, 2013

I.   SUMMARY

In 1977, petitioner Robert M. Lee was convicted of first-degree murder in Worcester Superior Court and sentenced to life in prison without possibility of parole. The jury found that Lee was hired by Janet Brady to kill her live-in boyfriend, Angel Santos Davilla, and that Lee did so by shooting Davilla with a shotgun. Brady was indicted with Lee, but on the eve of trial she pled to a lesser charge and ultimately testified against Lee at his trial.[1]

Lee has maintained his innocence since his conviction. He timely filed a §2254 petition with this court, raising three grounds for relief: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) prosecutorial misconduct.

As to trial counsel's ineffectiveness, Lee alleges many errors that, Lee contends, deprived him of a fundamentally fair trial.

---

[1] Brady was sentenced to 15-20 years in prison, and she died on April 25, 2001. See Brady Death Certificate, Rogers Aff. in Support of Lee's Motion for Discovery Ex. D (Docket No. 21).

As to prosecutorial misconduct, Lee argues that: (1) the prosecutor did not disclose exculpatory evidence to Lee's trial counsel; and (2) that state attorneys and state law enforcement officers refused to provide Lee's trial record, discovery, police reports, and public records to Lee's current counsel, which she states was needed to prepare Lee's second motion for a new trial, filed in 2004.

Lee argues that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim based on alleged errors of trial counsel, which are identified in the petition.

Respondent Michael Corsini contends that Lee's claims of ineffective assistance of trial counsel and prosecutorial misconduct have been procedurally defaulted, and must be denied because Lee cannot demonstrate cause and prejudice or actual innocence to excuse the default. As to the ineffective assistance of appellate counsel, Corsini asserts that the SJC rejected this claim and that, because this resolution was not contrary to, or an unreasonable application of clearly established Supreme Court law, habeas relief is not warranted.

For the reasons stated below, the court finds that all three of the petitioner's claims are procedurally defaulted. The petitioner has not shown cause and prejudice, or the actual innocence which would make a failure to vacate his conviction a

2

miscarriage of justice, to excuse the default. Therefore, the petition is being denied.

## II.   FACTS

This petition is the latest chapter in a long procedural history, which began in 1976.

### A.   The State Court Proceedings

#### 1.   Trial

After a two-week jury trial before Judge John T. Ronan, Lee was convicted of murder in the first degree on May 26, 1977. See Tr. May 26 and May 27, 1976 at 1127 (Ex. E to Vol. II of Suppl. Answ., Docket No. 27). The next day he was sentenced to life in prison without possibility of parole. Id. at 1133-34. Frank Opie, Esq., represented Lee during trial.

The Massachusetts Supreme Judicial Court (the "SJC") has summarized both the key evidence supporting Lee's conviction and Lee's unsuccessful alibi defense:

> The Commonwealth presented evidence that, on the evening of August 26, 1976, Angel Santos Davilla was mortally wounded by a shotgun blast through a window of his home in Sterling. The victim, still alive, was transported to a hospital where he died of the gunshot wounds some twenty-five days later, without identifying his assailant. The principal witness for the prosecution was Janet Brady, who had been indicted with the defendant but subsequently pleaded guilty to a conspiracy charge. Brady testified that she and the victim had been living together, along with her children from a previous marriage, in the home where the shooting took place. Brady stated that, as her relationship with the victim deteriorated over the summer of 1976, she looked for "someone to pay to do him harm." She contacted one DeCot, who in turn put her in contact

3

with the defendant.  Brady described several meetings with the defendant in local bars and in the back office of her place of work during which they made plans to "take care of" Davilla.  In addition to $500 which Brady gave him at the outset, the defendant demanded $2,000. On the Monday before the shooting, Brady paid Lee the $2,000.  They met again to work out the details: Brady would see that her children and dogs were out of the house when Lee came to "do it." Brady acknowledged that she had revealed to her son and two of his friends that she had arranged to have Davilla "taken care of."

Police officers investigating the shooting found a single yellow Sears shotgun shell outside the victim's house. There was expert testimony that the spent shell came from a 20-gauge shotgun.  The lead fragments found on the stairway inside the victim's house, as well as those extracted from his body during the autopsy, were No. 8 shot. The officers who arrested Lee on August 29 discovered in his closet a 20-gauge Remington shotgun and five yellow Sears 20-gauge shotgun shells filled with No. 8 shot. The police subsequently obtained a warrant and seized the gun and shells.

The testimony of neighbors of the victim indicated that the shooting occurred about 8:45 P.M. on August 26, 1976.  A small reddish car with a noisy muffler was seen being driven away from the scene. The defendant's wife owned a red Toyota automobile.  Other witnesses testified that sometime between August 23 and 26 Lee picked up the shotgun in question, which he had loaned earlier to a friend.

Presenting an alibi defense, Lee offered his own and corroborating testimony that he was at a bar some distance away from the victim's home from eight o'clock until well after nine on the evening in question. He sought to show that he was not driving his wife's red Toyota but a jeep that night, that the Toyota was not old or noisy, and that he did not recover his shotgun until Friday, August 27, the day after the shooting. Lee's version of his contact with Janet Brady was that she asked him to collect money from a Mr. "Warner." He claimed Brady concocted the story of the conspiracy with Lee in order to protect her son or someone else who actually shot Davilla.

Commonwealth v. Lee, 383 Mass. 507, 508-09 (1981).

After his conviction, on August 11, 1977, Lee filed a pro se

Motion and Affidavit for a New Trial and, on September 7, 1977, he file a _pro_ _se_ Affidavit of Motion to Vacate and Set Aside Illegal Sentence Imposed, which was treated as a Motion for a New Trial. However, on March 31, 1980, Lee withdrew these motions before they were ruled upon. _See_ Lee's Withdrawal (Ex. 9 to Vol. I of Suppl. Answ., Docket No. 26).

### 2.    The Appeal

Lee, represented by new counsel, Elliot Weinstein, Esq., filed a timely notice of appeal under Mass. Gen. Laws ch. 278, §§33A-33G, arguing that the trial judge committed reversible error in his: (1) jury instructions concerning malice; (2) refusal to instruct on involuntary manslaughter; (3) denial of Lee's motion for directed verdict; and (4) denial of Lee's pretrial motion to suppress the shotgun and shells seized from his house. _See_ Lee Appellate Brief at iii (Ex. 6 to Vol. I of Suppl. Answ.).  On May 5, 1981, the SJC affirmed Lee's conviction. _See_ _Lee_, 383 Mass. at 515.

### 3.    The First Motion for a New Trial

On July 6, 1983, through a third counsel, Joseph Flak, Esq., Lee filed a Motion for a New Trial. _See_ Lee Mot. New Trial (Ex. 10 to Vol. I of Suppl. Answ.).  Flak was disbarred and, on August 22, 1989, Lee's fourth counsel, Blair Bigelow, Esq., took over Lee's case.   Mr. Bigelow filed a Substitute Motion for a New Trial (the "First Motion for a New Trial"). _See_ Lee First Mot. New Trial (Ex. 11 to Vol. I of Suppl. Answ.).

In his First Motion for a New Trial, Lee raised the following claims: (1) ineffective assistance of trial counsel based upon failure to investigate and determine whether Lee had a defense of lack of criminal responsibility based on mental deficiencies caused by his extensive war wounds;[2] (2) ineffectiveness of counsel in cross-examination of witnesses; (3) ineffectiveness of counsel in failing to request a jury instruction on misidentification; (4) trial judge error in instructions concerning reasonable doubt; (5) trial judge error in use of language that allegedly resulted in improper burden shifting; (6) trial judge error in jury instructions concerning malice; and (7) trial judge error in stating, during jury instructions, that judicial error may be remedied. See id. at 1-4. This motion was denied by Judge Ronan without a hearing on February 2, 1990.

Lee filed a pro se motion to reconsider that decision on April 3, 1990, captioned "Defendant's Amended Motion for a New Trial", adding several claims: (1) lack of criminal responsibility and/or lack of capacity to form the intent to commit murder due to intoxication caused by prescription medication and alcohol at the time of the murder; (2) incompetence to stand trial due to

---

[2] Lee's First Motion for a New Trial states that he sustained serious injuries to his face, left arm, and legs while fighting in Vietnam. Lee First Mot. New Trial at 2; Medical Report, Ex. D to id. These injuries led to the removal of a portion of Lee's brain and his left eye, leaving Lee with various medical issues, including epilepsy, which required him to take a variety of prescription medications. Id.

intoxication from those substances during his trial; (3) lack of criminal responsibility by reason of "automatism"; and (4) ineffective assistance of trial and appellate counsel for failure to raise those claims. See Lee Am. Mot. (Ex. 12 to Vol. I of Suppl. Answ.). Judge Ronan denied the motion to reconsider without a hearing on April 20, 1990.  See id. (handwritten decision on final two pages of Ex. 12 to Vol. I of Suppl. Answ.).

On July 9, 1990, Lee sought leave to appeal and for appointment of counsel. See SJC Docket (Ex. 4 to Vol. I of Suppl. Answ.). A new attorney, Harold Robertson, Esq., was appointed to represent Lee, and he filed a supporting memorandum. See id. A hearing concerning Lee's motion was held before a single justice of the SJC, Justice Ruth Abrams. See id. Justice Ruth Abrams denied the motion on November 10, 1992.  See id.; Nov. 10, 1992 Memorandum (final two pages of Ex. 15 to Vol. I of Suppl. Answ.).

4.    The Second Motion for a New Trial

On September 29, 1995, Lee filed a pro se Motion for a New Trial, Motion for Assignment of a New Judge and for Transfer to Another Venue for a Hearing.  See Pet'r's Mem. at 2 (Docket No. 2); Lee Mot. New Trial (Ex. 13 to Vol. I of Suppl. Answ.); New Worcester Docket at 2 (in Ex. 1 to Vol. I of Suppl. Answ.).  Lee's motion for court appointed counsel was allowed, as was his motion for assignment of a new judge. See New Criminal Docket (in Ex. 1 to Vol. I of Suppl. Answ.). The case was transferred to a new judge,

7

but counsel was not assigned and no action was taken on Lee's pro se motion. Id.

Almost a decade later, on February 5, 2003, Mary Rogers, Esq., was appointed as new counsel for Lee. See id. On September 9, 2004, Ms. Rogers filed a Motion for a New Trial to Be Supplemented After Discovery Is Provided (the "Second Motion for a New Trial"), which was substituted for Lee's pro se motion. See Lee Second Mot. New Trial (Ex. 14 to Vol. I of Suppl. Answ.); New Worcester Docket at 3 (#50, #51). In connection with the Second Motion for a New Trial, Lee also filed motions for Discovery and to Be Furnished with Criminal Records. See New Worcester Docket at 3 (#52, #53).

In Lee's Second Motion for a New Trial, he argued that his trial counsel was ineffective for many reasons, including that:

(1) he failed to call two main suspects — Brady's eldest son and that son's friend — as witnesses and instead allowed admission of their written statements to police to substitute for live testimony;

(2) he failed to argue that Brady's ex-husband may have been the murderer, despite statements to the police by the victim and Brady that suggested the ex-husband might have shot the victim;

(3) he failed to cross-examine Brady about her change of plea on the eve of trial and her prior inconsistent statements to the police;

8

(4) he had an undisclosed conflict of interest, having represented Brady in a divorce proceeding several years prior to the trial;

(5) he inadequately prepared, investigated, and presented evidence, including a complete failure to have any witnesses ready at the beginning of trial and his misstating of facts during his closing argument;

(6) he was an alcoholic who drank during trial and was ultimately censured by the bar and is no longer practicing law;

(7) he failed to hire a firearms expert at the outset of trial, and the one he hired mid-trial was incompetent;

(8) he required assistance from the trial judge in framing foundation questions regarding Lee's character for truthfulness; and

(9) he allowed Lee to be seated in the dock during trial.

See generally Lee 2nd Mot. New Trial (Ex. 14 to Vol. I of Suppl. Answ.).

In addition, Lee advanced claims of prosecutorial misconduct, alleging that: (1) the police failed to investigate Lee's alibi, Brady's alibi, or those of Brady's eldest son and his friends; (2) the police threatened a witness; (3) the prosecutor failed to disclose exculpatory evidence; and (4) the Commonwealth's firearms expert failed to preserve, document, and measure evidence. See id.

Finally, Lee claimed that his post-conviction attorneys were ineffective for failing to raise these claims. Id. The Commonwealth opposed Lee's Second Motion for a New Trial. See Opp. 2d Mot. New Trial (Ex. 15 to Vol. I of Suppl. Answ.).

In the process of preparing the Second Motion for a New Trial, Lee's attorney requested various documents concerning Lee's case (including police reports, ballistics records, grand jury minutes, and the victim's statements to police) from state prosecutors and law enforcement officers, but they refused to provide the requested materials. See Pet'r's Mem. at 66-67. On February 24, 2005, Lee filed a Motion to Order Compliance for Discovery and Motion to Be Furnished with Criminal Records, which the Commonwealth opposed. See New Worcester Docket at 3 (#57, #58).

On June 15, 2005, a non-evidentiary hearing concerning Lee's Second Motion for a New Trial was held by Judge Peter Agnes. The record does not include a transcript of that hearing.  However, Lee's counsel states that, at the hearing, she told Judge Agnes that Lee had not yet obtained any discovery, including ballistics and police reports. See Pet'r's Mem. at 67. Lee's counsel represents that Judge Agnes refused to hear argument on the issue and stated he would not act on any Motion for Discovery: "'The transcript is available. The exhibits are available and that's the starting point. So I'll take the matter under advisement.'" Id. at 67 (quoting June 15, 2005 Tr. at 27).

Ultimately, in a September 16, 2005 Memorandum of Decision and Order, Judge Agnes denied Lee's Second Motion for a New Trial, without explicitly addressing Lee's motions for discovery or for production of criminal records. See Agnes' Sept. 16, 2005 Mem. & Ord. (Ex. 16 to Vol. I of Suppl. Answ.).

On September 29, 2005, Lee filed a Motion and Affidavit to Reconstruct the Record, in which he again sought police reports, ballistic reports, and grand jury minutes. See Pet'r's Mem. at 67; New Worcester Docket at 4 (#61). Judge Agnes denied that motion without a hearing, writing that: "This case was the subject of a thoroughly briefed and thoroughly argued motion for a new trial that was thoroughly considered by the court and rejected. At oral argument[,] moreover, defense counsel was invited to identify any other grounds for relief and did not raise the issues set forth in this filing." New Worcester Docket at 4. However, Lee's counsel states that the second part of Judge Agnes' quoted statement is "not true," because Lee had previously filed motions for discovery and compliance, and counsel raised that issue unsuccessfully at the June 15, 2005 hearing. See Pet'r's Mem. at 67.

On October 19, 2005, Lee filed a motion for reconsideration, with supporting affidavits. See New Worcester Docket at 4. On November 7, 2005, Judge Agnes denied the motion without a hearing, concluding that the motion "present[ed] nothing new of a material nature." Id.

11

### 5.   Proceedings Before the SJC's Single Justice

On December 1, 2005, pursuant to Mass. Gen. Laws ch. 278, §33E, Lee filed an appeal with the Single Justice of the SJC (the "Single Justice Appeal") for leave to appeal Judge Agnes': (1) denial of Lee's Second Motion for a New Trial; (2) denial of Lee's motions for discovery, pursuant to Mass. R. Crim. P. 30(c)(4); (3) denial of Lee's motion to reconstruct the record; and (4) denial of reconsideration of the denial of Lee's Second Motion for a New Trial. See Lee Single Justice Appeal (Ex. 18 to Vol. I of Suppl. Answ.). Oral argument was held before Justice Francis X. Spina on April 5, 2006. For the reasons described in §III.A, infra, Justice Spina denied Lee's appeal on July 19, 2006. See Single Justice Mem. & Ord. (Ex. 22 to Vol. I of Suppl. Answ.; Ex. to Pet., Docket No. 1-2).

### B.   Habeas Proceedings Before This Court

Lee filed the instant Petition on July 17, 2007. See Pet. (Docket No. 1). As stated earlier, he raises the following claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) prosecutorial misconduct. Notably, in his Petition, Lee conflated his trial and appellate counsel arguments into one claim of ineffective assistance of counsel. However, the bulk of Lee's memorandum in support of his Petition concerns his trial counsel's alleged ineffectiveness. See generally Pet'r's Mem. In fact, Lee's only complaint about his

appellate counsel is that "he failed to raise any of the issues [regarding trial counsel ineffectiveness and prosecutorial misconduct at trial] presented in" Lee's habeas memorandum. See Pet'r's Mem. at 16.

By his own admission, the three claims that Lee raises in his Petition "are virtually identical [to those presented to the Single Justice] in state court" in connection with the Second Motion for a New Trial. Lee Reply at 3 (Docket No. 44). That is, they are the same as those raised in his Second Motion for a New Trial.

In the petition, Lee's claims concerning ineffective trial counsel, Frank Opie, are that:

(1) Opie failed to call two prime suspects to testify (i.e., Brady's eldest son and that son's friend) and ineffectively questioned the only suspect who did appear, Pet'r's Mem. at 17-22;

(2) Opie ineffectively questioned the key witness Brady by, id. at 23-26:

(a) failing to impeach her concerning: (i) her plea bargain; (ii) her prior inconsistent statements to police concerning her plot to hurt Davilla; and (iii) the fact that her testimony concerning her whereabouts on the day of the murder did not "add up"; and

(b) failing to bring out that her son, Lance, and his two friends offered to kill Davilla for free or cheaper than

13

$2500;

(3) Opie failed to present evidence that Brady's ex-husband was named by Davilla before he died, and by Brady, as a suspect, and that the ex-husband had threatened Davilla in the past, id. at 26-27;

(4) Opie had no reasonable trial strategy in, id. at 27-39:

    (a) failing to investigate witnesses prior to trial;

    (b) failing to know names of defense witnesses prior to trial;

    (c) failing to prepare witnesses before their testimony;

    (d) presenting witnesses in a confusing fashion; and

    (e) calling Lee to testify and then failing to question him regarding his alibi on the night of the murder, "which was obviously the crucial reason [Lee] was called to the stand;"

(5) Opie failed in presenting expert forensic evidence by, id. at 40-48:

    (a) Failing to have the physical evidence tested by a competent firearms expert;

    (b) Hiring a known "charlatan" mid-trial,[3] who admitted

---

[3] During the trial, Opie hired Shelly Braverman to serve as a ballistics expert.  Lee provided this court with affidavits from two of Braverman's peers, both of whom are qualified ballistics experts, who state that Braverman was incompetent. See Bates Aff. at ¶¶29-30, Lee App'x to Pet. (Docket No. 3-2); Robinson Aff. at ¶¶18-26, Lee App'x to Pet. (Docket No. 3-3).

he did not examine the physical evidence and merely "glanced" at the Government's expert's ballistics report; and

(c) Conceding that the shotgun shell fired at the scene came from Lee's gun, without determining through his own expert whether it did or not.

(6) Opie failed to expose the weaknesses in the Government's forensic testing and expert testimony, id. at 48-50;

(7) Opie failed to disclose to Lee a conflict of interest, based on Opie's representation of Brady in her divorce proceeding several years before the trial, id. at 50-52;

(8) Opie was an alcoholic who was drinking during trial, id. at 52-56;[4]

---

[4] Lee has submitted several forms of evidence to support his claim that Opie was an alcoholic and was drinking during Lee's trial:

(1) A Boston Herald article in which Opie admitted there was "no question" he was a "drunk" during the period he represented Lee. See Second Rogers Aff. at 8, Lee App'x to Pet. (Docket No. 3-8).
(2) Affidavits from Lee's counsel and her paralegal stating that Opie admitted during a telephone conversation that he was a "heavy drinker," may have been drinking during Lee's trial, and half the time did not know his client's name when he showed up at court. See id. at ¶2; Tammy Lee Aff. at ¶3, Lee App'x to Pet. (Docket No. 3-9).
(3) An affidavit from Thomas Lilly, an attorney who practiced in Opie's town, knew Opie well, and represented Robert DeCot, the person who allegedly put Brady in touch with Lee, during Lee's trial. In the affidavit, Lilly acknowledges Opie's heavy drinking and generally cavalier approach to legal representation, and states that during the Lee's trial he "thought Opie was falling short of the standard he was capable

(9) Opie had financial difficulties, was accused of committing
fraud while representing Lee, and subsequent to Lee's trial
was found to have committed fraud, id. at 56-57;[5] and

(10) There were many Board of Bar Overseers complaints
concerning Opie, including a case that was pending while Opie
was representing Lee, for which Opie received a public
reprimand, id. at 57-58.

In support of his claim of prosecutorial misconduct, Lee makes
two allegations:

(1) The prosecutor did not disclose exculpatory evidence; and

(2) The district attorney failed to provide the trial record
or discovery, "severely hampering the defense from
representing Lee in his Motion for a New Trial." Pet. at 7.
Furthermore, the district attorney and state police have not
provided relevant police reports and public records. Id.

In connection with his Petition, Lee also filed several
motions: (1) Motion for Discovery (Docket No. 18); (2) Motion for
an Evidentiary Hearing (Docket No. 19); (3) Motion for Criminal

---

of."  Lilly Aff. at ¶14, Lee App'x to Pet. (Docket No. 3-6).
(4) An affidavit from John Lorden, who was associated with
Opie in the 1970s for three years, and who affirms that Opie was
a heavy drinker.  See Lorden Aff., Lee App'x to Pet. (Docket No.
3-7).

[5] Lee presents an August 10, 1978 decision from the
Hampshire County Court which found real estate transfers by Opie
to be fraudulent. See Hampshire Judgment, Lee App'x to Pet.
(Docket No. 3-10).

Records of Witnesses (Docket No. 20); and (4) an Assented to Motion to Consolidate All Pending Motions (Docket No. 30).

On March 17, 2009, the court held a hearing to address these related motions. On March 18, 2009, the court issued an order memorializing the oral decision rendered at that hearing. See Mar. 17, 2009 Tr. at 25-30 (Docket No. 39); Mar. 18, 2009 Order (Docket No. 36). In short, the court denied Lee's Motion for Discovery; denied Lee's Motion for an Evidentiary Hearing; denied Lee's Motion for Criminal Records of Witnesses; and found Lee's Assented to Motion to Consolidate All Pending Motions to be moot. The court also ordered Corsini to file an Opposition to Lee's Petition, and ordered Lee to file a Reply.

After the court granted a joint motion to modify the briefing schedule, Corsini filed his Opposition, Corsini Opp. (Docket No. 42), and Lee filed a Reply, Lee Reply (Docket No. 44). Lee's counsel, Rogers, subsequently filed an affidavit in support of Lee's Reply, appending to it two articles regarding forensic science issues and several pages of Lee's trial transcript that discuss the forensic evidence (e.g., testing of the shell found at the scene of the murder and the shotgun/shells seized at Lee's residence). See Rogers New Aff. (Docket No. 45); Rogers New Aff. Exs. (Docket No. 45-1).

III. ANALYSIS

   A.   Procedural Default

   "A federal court will not consider a federal habeas claim 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011) (quoting Walker v. Martin, 131 S. Ct. 1120, 1127 (2011)); see also Coleman v. Thompson, 501 U.S. 722, 729 (1991); Harris v. Reed, 489 U.S. 266, 262 (1989). A petitioner's procedural default of a federal claim in state court constitutes an independent and adequate state ground if the state regularly and consistently applies the procedural rule with which the petitioner did not comply and has not waived it by relying on some other ground. See Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Jewett, 634 F.3d at 76. Procedural default is a preliminary issue for a federal court to address before considering the merits of a claim. See Lambrix v. Singletary, 520 U.S. 518, 524 (1997); Lynch v. Ficco, 438 F.3d 35, 47 n.10 (1st Cir. 2006) ("It is customary to address the procedural default issue on habeas first, even if that issue may be more complex than simply turning to the ultimate question, and even when the likely affirmance on the ultimate question is to uphold the state court judgment.").

   However, the "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any

[procedural] bar to federal court review that might otherwise have been available." Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); accord Phoenix v. Matesanz, 189 F.3d 20, 25-26 (1st Cir. 1999). In addition, the bar to a federal habeas court considering a procedurally defaulted claim "may be lifted . . . if 'the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law,'" Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (quoting Coleman, 501 U.S. at 750), or a fundamental miscarriage of justice, see Coleman, 501 U.S. at 750.

The last reasoned state court decision on the claims at issue in this case was the denial by Justice Spina, as the Single Justice, of Lee's application for leave to appeal the denial of his Second Motion for a New Trial. Accordingly, that decision is the basis for determining whether or not habeas review is precluded by an independent and adequate state ground. See Phoenix, 189 F.3d at 25 (citing Ylst, 501 U.S. at 801).

Lee was required to apply to a Single Justice "gatekeeper" of the SJC for leave to appeal the lower court's denial of his Second Motion for a New Trial. See Mass. Gen. Laws ch. 278, §33E. Section 33E states that where a motion is filed in the Superior Court after the SJC's decision on the case is final, "no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the

ground that it presents a <u>new and substantial question</u> which ought to be determined by the full court." <u>Id.</u> (emphasis added). The First Circuit has held that §33E has been applied with sufficient consistency by the SJC to qualify as an "independent and adequate state ground" barring federal habeas review. See <u>Mendes v. Brady</u>, 656 F.3d 126, 128 (1st Cir. 2011); <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 75 (1st Cir. 2009).

Section 33E "requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal." <u>Yeboah-Sefah</u>, 556 F.3d at 74-75 (quoting <u>Commonwealth v. Ambers</u>, 397 Mass. 705, 707 (1986)) (internal quotation marks omitted). "Issues not raised at trial or pursued in available appellate proceedings are waived." <u>Commonwealth v. Pisa</u>, 384 Mass. 362, 366 (1981). "An issue is not 'new' for the purposes of [§33E] if it could have been addressed at trial or on direct review, had the defendant properly raised it there." <u>Yeboah-Sefah</u>, 556 F.3d at 74. "Where there has been procedural waiver below, the denial of review under §33E is an independent and adequate state ground that bars federal habeas review." <u>Simpson v. Matesanz</u>, 175 F.3d 200, 206 (1st Cir. 1999); <u>see also</u> <u>Yeboah-Sefah</u>, 556 F.3d at 75 ("We hold that the single justice's decision to deny full SJC r`eview of petitioner's claim under §33E is based on a procedural waiver, namely, his failure to

raise that claim in prior state proceedings, and therefore, rests on an independent and adequate state ground for decision.").

In the instant case, after quoting the applicable standards as stated by the SJC in Ambers and Pisa, Justice Spina wrote: "Lee's claims that trial counsel rendered ineffective assistance, and his claims of prosecutorial misconduct, are not new; these issues could have been raised on direct appeal or in the defendant's first motion for a new trial." July 19, 2006 SJC Mem. and Order at 3. Therefore, these two claims were decided on independent and adequate state grounds that bar review by this court. See Yeboah-Sefah, 556 F.3d at 75; Simpson, 175 F.3d at 206.

The Single Justice did not decide whether or not Lee's claim of ineffective assistance of appellate counsel was new. Rather, in rejecting that claim as sufficient to be reviewed by the full SJC, Justice Spina wrote that:

> Arguably, this is the defendant's first opportunity to raise the issue of ineffective assistance of appellate counsel who represented him on his first motion for a new trial. However, even assuming that this claim could be new, it is not substantial. The judge in the Superior Court considered the merits of the underlying claims of ineffective assistance of trial counsel and prosecutorial misconduct, and found that they did not warrant a new trial. After a hearing and a thorough review of the record, I agree that the defendant has not demonstrated that he is likely to succeed on the merits of any of these claims. Cf. Commonwealth v. Hodge, No. 1, 380 Mass. 851, 855 (1980) (substantial question "offers some reasonable possibility of a successful decision in the appeal").

July 19, 2006 SJC Mem. and Order at 3.[6]

To determine whether or not a claim is substantial under §33E, the Single Justice assesses whether that claim is "meritorious . . . in the sense of being worthy of consideration by an appellate court." <u>Commonwealth v. Gunter</u>, 459 Mass. 480, 487 (2011). "[A]n issue which is worthy of presentation to an appellate court . . . is one which offers some reasonable possibility of a successful decision in the appeal." <u>Commonwealth v. Hodge</u>, 380 Mass. 851, 855 (1980) (internal quotation marks omitted).

The First Circuit recently addressed the implications of a decision by a Single Justice that a claim of ineffectiveness of appellate counsel is not substantial and held that such a conclusion alone compels a finding of procedural default. <u>Costa v. Hall</u>, 673 F.3d 16, 22-25 (1st Cir. 2012). In <u>Costa</u>, the First Circuit wrote that:

> The Single Justice's finding that neither of Costa's ineffective assistance of counsel claims presented "new and substantial questions" within the meaning of §33E review constitutes an independent and adequate state ground. The Single Justice observed that both claims merely reiterated the same substantive challenges to [the witness's] credibility already decided against Costa on the merits. Although Costa argues that his ineffectiveness of appellate counsel claim necessarily

_____

[6] Lee does not argue that the statement that "defendant has not demonstrated that he <u>is likely</u> to succeed . . ." indicates that the Single Justice used an improperly high standard to deny his claims a hearing by the full SJC. In any event, the immediately following citation to <u>Hodge</u> and the quotation of the correct and familiar "reasonable possibility" standard suggests that the Single Justice employed the correct standard.

> presents a "new" question in that it could not have been
> raised until after his direct appeal, the Single Justice
> also found that this claim was not substantial, rendering
> Costa's "newness" argument, were it even plausible,
> irrelevant. <u>The Single Justice's finding of a lack of
> substantiality constitutes an independent and adequate
> state ground in and of itself and acts to bar federal
> review</u>. <u>Mendes</u>, 656 F.3d at 128.

<u>Id.</u> at 24 (emphasis added) (footnote omitted). In essence, as
District Judge Douglas P. Woodlock wrote, "[t]he First Circuit in
<u>Costa</u> explained that a §33E gatekeeper justice's finding either
that a claim is 'not new' or that justice's finding that a claim is
'not substantial' would separately 'constitute[] an independent and
adequate state ground in and of itself and acts to bar federal
review.'" <u>Souza v. Mendonsa</u>, 2013 WL 4517978, at *5 (D. Mass. Aug.
23, 2013) (quoting <u>Costa</u>, 673 F.3d at 24).

Lee's claim of ineffectiveness of his appellate counsel is
subject to this bar. In <u>Costa</u>, the Single Justice found that the
petitioner's claim "failed to present a new and substantial
question." <u>Costa</u>, 673 F.3d at 19. However, in finding no procedural
default in <u>Costa</u>, this district court stated:

> [T]he Single Justice wrote, apparently as a restatement
> of the statutory requirement, that Costa had "failed to
> present a new and substantial question." However, the
> Single Justice's analysis, like that in <u>Phoenix</u> [<u>v.
> Matesanz</u>, 189 F.3d 20, 25 (1st Cir. 1999)], evidently
> rested not on a lack of novelty, but rather on the
> conclusion that the ineffective assistance of counsel
> claims were not substantial because the required
> prejudice had not been shown.

<u>Costa v. Hall</u>, 2010 WL 5018159, at *10 (D. Mass. Dec. 2, 2010)
(Wolf, J.) (citation omitted). Therefore, in part because the

Single Justice had considered new evidence and made certain findings, this court concluded that, as in Phoenix, the Single Justice had made a decision on the merits and habeas review was not barred. Id. at *10-11. Nevertheless, on appeal the First Circuit held that in the circumstances of Costa as it found them: "Massachusetts' §33E procedure for gatekeeper review merits 'separate, categorical treatment' as an independent and adequate state ground." Costa, 673 F.3d at 23 (quoting Mendes, 656 F.3d at 129). Therefore, in the instant case, the fact that Justice Spina did not make a finding that Lee's ineffectiveness of appellate counsel claim was not new does not alter the conclusion that the Single Justice's finding that the claim was not substantial constitutes a finding of procedural default under state law which bars a decision on the merits of that claim by this court.[7]

---

[7] The court notes a tension between the First Circuit's statement in Costa that "[t]he Single Justice's finding of a lack of substantiality constitutes an independent and adequate state ground in and of itself," 673 F.3d at 24, and the related statement in that decision that:

> This accords with our prior case law. In Jewett v. Brady, 634 F.3d 67 (1st Cir. 2011), we held that where, unlike here, the Single Justice finds that a claim is "new" within the meaning of §33E, a federal habeas court must accept this as a binding merits determination of newness and may not look behind the reasoning. Id. at 76 ("[A] determination that the issues are 'new' and simply not 'substantial' resolves the claims on the merits and does not signal procedural default."). However, where, as here, the Single Justice finds a claim is neither new nor substantial under §33E, this is a procedural bar to federal habeas review. Id. And in Phoenix v. Matesanz, 189 F.3d 20

B.   <u>Excusing Procedural Default</u>

As indicated earlier, where, as here, "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Costa</u>, 673 F.3d at 25. Therefore, the burden of proof is on the petitioner to establish

---

(1st Cir. 1999), we noted that in a case where the Single Justice finds a procedural default but briefly examines the merits to determine if the "substantial risk of a miscarriage of justice" standard is met, such review does not undercut the independence and adequacy of the state grounds. <u>Id.</u> at 25 n.2.

<u>Id.</u> at 25 n.5.  As Judge Woodlock has written:

The First Circuit used broad and categorical language in <u>Costa</u>, but presented with a case cleanly presenting the issue, the First Circuit might be reluctant to find a federal claim procedurally defaulted where the §33E gatekeeper justice in fact found the new claim "new" but "not substantial."

<u>Souza</u>, 2013 WL 4517978, at *5 n.3.

The instant case does not cleanly present this issue because the Single Justice did not make a finding on whether or not the claim of ineffectiveness of appellate counsel was new.  In any event, the language in the text of the decision in <u>Costa</u> is clear and unqualified.  Like Judge Woodlock in <u>Souza</u>, this court must apply the First Circuit's holding in <u>Costa</u>, 673 F.3d at 24, that if the Single Justice finds a claim is not substantial, federal review is barred.

25

both cause <u>and</u> prejudice in order to obtain relief from procedural
default on this theory. <u>Coleman</u>, 501 U.S. at 750. The Supreme Court
has "expressly rejected [the] contention that a showing of actual
prejudice 'should permit relief even in the absence of cause.'"
<u>Carrier</u>, 477 U.S. at 494 (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 134
n.43 (1982)).

    As explained below, Lee has failed to prove that there is
cause for his procedural default. It is, therefore, not necessary,
or in this case appropriate, to determine whether he was prejudiced
by it. In addition, Lee has not proven that there will be a
fundamental miscarriage of justice if this court does not decide
the merits of his claim.

    1.   <u>Cause and Prejudice</u>

        a.   <u>Cause</u>

    In <u>Costa</u>, addressing comparable claims that appellate counsel
was ineffective in failing to raise the alleged ineffectiveness of
trial counsel, the First Circuit wrote:

> Because Costa has procedurally defaulted his ineffective
> assistance of counsel claims in state court, he cannot
> simply rely on what is at the heart of the merits of
> those claims, the alleged ineffectiveness, to show cause
> for procedural default of the same claims. [<u>Edwards v.</u>]
> <u>Carpenter</u>, 529 U.S. [446, 453 (2006)]. He must
> independently satisfy the cause and prejudice standard
> with respect to both ineffective assistance claims.
> Federal habeas courts do not exempt ineffective
> assistance of counsel claims from the general rule
> requiring cause and prejudice for procedural default,
> because to do so would render the exhaustion requirement
> "illusory." <u>Id.</u> at 452. This is true where, as here, the
> petitioner attempts to excuse procedural default of his

26

> ineffective assistance of counsel claim by pointing
> merely to another layer of ineffectiveness.
>
> Costa has shown neither cause for nor prejudice from this
> second level of procedural default. Cause for procedural
> default "must ordinarily turn on whether the prisoner can
> show that some objective factor external to the defense
> impeded counsel's efforts to comply with the State's
> procedural rule." Carrier, 477 U.S. at 488; see also Reed
> v. Ross, 468 U.S. 1, 16 (1984). This could include a
> showing that "the factual or legal basis for a claim was
> not reasonably available to counsel," Carrier, 477 U.S.
> at 488, or that there was "some interference by
> officials," id. (quoting Brown v. Allen, 344 U.S. 443,
> 486 (1953)) (internal quotation marks omitted).

Costa, 673 F.3d at 25.

In the instant case, the relevant state procedural rule is the §33E requirement that a claim be both "new and substantial." See id. at 23. This "relatively narrow opportunity for appellate review of subsequent claims for collateral relief" is the "quid pro quo" for the broad right of review that the defendant has on direct review in capital cases in Massachusetts. Mendes, 656 F.3d at 129.

Lee acknowledges that his three claims "are virtually identical [to those presented to the Single Justice under §33E] in state court and in this Habeas Petition." Lee Reply at 3. Lee requested additional discovery and an evidentiary hearing during both the state proceedings and these habeas proceedings. This court ruled that the petitioner had not shown good cause for such discovery in view of the lack of "specific allegations [before the court that showed] reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he

is [. . .] entitled to relief." Mar. 17, 2009 Tr. at 25 (Docket No. 39) (quoting Bracy v. Gramley, 520 U.S. 899, 908-09 (1997)) (internal quotation marks omitted); see also Mar. 18, 2009 Order (Docket No. 36).[8]

    As Lee has presented no new evidence to this court, he has not shown cause by presenting a "factual or legal basis for a claim [that] was not reasonably available to counsel" when attempting to persuade the Single Justice that it was new and substantial. Costa, 673 F.3d at 25 (quoting Carrier, 477 U.S. at 488) (internal quotation mark omitted). Moreover, as the court implicitly held in denying Lee discovery concerning his defaulted claim of prosecutorial misconduct, Lee has presented to this court only "sweeping allegations of a cover-up" and "conclusory statements." Mar. 17, 2009 Tr. at 26. The Single Justice explained why, in his view, the claims of prosecutorial misconduct were not substantial. See July 19, 2006 Mem. & Order at 6-8. Similarly, this court finds that Lee has not proven "interference by officials" in the form of the withholding of evidence, or in any other way, that provides the cause required for the court to consider the merits of his procedurally defaulted claims. Costa, 673 F.3d at 25 (quoting Brown, 344 U.S. at 486) (internal quotation mark omitted).

_____

    [8] The court also denied Lee's motion for an evidentiary hearing without prejudice to possible reconsideration if it was later shown that Lee had not procedurally defaulted his claims, Mar. 17, 2009 Tr. at 25, as the court now finds he has. See also Mar. 18, 2009 Order.

In acknowledging that the evidence and arguments presented to this court are the same as the evidence and arguments presented to the Single Justice, Lee implicitly acknowledges that he is contending that the cause for the default of his claims of ineffectiveness of trial counsel and prosecutorial misconduct is the alleged ineffectiveness of appellate counsel that the Single Justice found not to be substantial. This is the approach that the First Circuit rejected in Costa when, as described earlier, it wrote:

> Because Costa has procedurally defaulted his ineffective assistance of counsel claims in state court, he cannot simply rely on what is at the heart of the merits of those claims, the alleged ineffectiveness, to show cause for procedural default of the same claims. Carpenter, 529 U.S. at 453, 120 S. Ct. 1587.  He must independently satisfy the cause and prejudice standard with respect to both ineffective assistance claims.

Costa, 673 F.3d at 25. Lee has not proven such cause.

      b.   Prejudice

As indicated earlier, the Supreme Court has repeatedly held that a showing of actual prejudice is not sufficient to permit relief if cause has not also been proven. See Carrier, 477 U.S. at 494; Engle, 456 U.S. at 134 n.43. Because it could not affect the ultimate decision, it is, therefore, not necessary that the question of prejudice be decided when, as here, cause has not been proven. See, e.g., Burks v. Dubois, 55 F.3d 712, 716 n.3 (1st Cir. 1995) ("Because we descry no cognizable cause sufficient to excuse petitioner's procedural default, we have no occasion to discuss the

29

prejudice prong of the two-part inquiry in any great detail."
(citation omitted)).

In the instant case, it is most appropriate that this court
not decide whether Lee has been prejudiced by the Single Justice's
findings that each of his claims is not new and substantial. "In
the habeas context, the application of the independent and adequate
state ground doctrine is grounded in concerns of comity and
federalism." Coleman, 501 U.S. at 730. Considerations of comity
generally require federal courts to defer to state court decisions
based on state law if the petitioner had a full and fair
opportunity to present his defaulted claims and it would not be a
fundamental miscarriage of justice to permit those decisions to be
final. See id. at 750. As the Supreme Court explained:

> Finality has special importance in the context of a
> federal attack on a state conviction. Murray v. Carrier,
> supra, at 487; Engle v. Isaac, supra, at 128.
> Reexamination of state convictions on federal habeas
> "frustrate[s] . . . 'both the States' sovereign power to
> punish offenders and their good-faith attempts to honor
> constitutional rights.'" Murray v. Carrier, supra, at
> 487 (quoting Engle, supra, at 128). Our federal system
> recognizes the independent power of a State to articulate
> societal norms through criminal law; but the power of a
> State to pass laws means little if the State cannot
> enforce them.

McCleskey v. Zant, 499 U.S. 467, 491 (1991).

In the instant case, Lee's claims were procedurally defaulted
because the Single Justice found that two of them were not new and
substantial, and one was, at least, not substantial. An inquiry
into whether Lee has been prejudiced by these decisions would

30

require an examination of the merit of Lee's claims, and the possible second guessing of the Single Justice, that would ultimately be gratuitous because the required cause has not been shown. Given the nature of the basis for procedural default in this case, such a decision would be inconsistent with the concepts of federalism and comity that are the foundations of habeas review. Therefore, the court is not making a finding concerning prejudice.

### 2.  Fundamental Miscarriage of Justice

"The cause and prejudice requirement . . . shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" Maples, 132 S. Ct. at 927 (alteration in original) (quoting Dretke v. Haley, 541 U.S. 386, 393 (2004)) (internal quotation marks omitted). This balance is struck by permitting federal courts to consider the merits of defaulted claims without a showing of cause and prejudice if the petitioner "demonstrate[s] that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Coleman, 501 U.S. at 750 (quoting Carrier, 477 U.S. at 495).

"To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving," the Supreme Court has "explicitly tied the miscarriage of justice

31

exception to the petitioner's innocence." <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995). To establish actual innocence, a petitioner must "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Id.</u> at 327 (quoting <u>Carrier</u>, 477 U.S. at 496). This standard of "probability" is satisfied only when the petitioner "demonstrate[s] that, '"in light of all the evidence,"' 'it is more likely than not that no reasonable juror would have convicted him.'" <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (quoting <u>Schlup</u>, 513 U.S. at 227-28). Furthermore, "'actual innocence' means <u>factual</u> innocence, not mere legal insufficiency." <u>Id.</u> (emphasis added). If actual innocence is demonstrated, that finding serves not as an independent basis for post-conviction relief, but as a "gateway" which, when proven, allows a habeas court to review the merits of otherwise defaulted claims. See, e.g., <u>Herrera v. Collins</u>, 506 U.S. 390, 416 (1993); <u>Goldman v. Winn</u>, 565 F. Supp. 2d 200, 222 (D. Mass. 2008).

In the instant case, the jury was presented with, among other things, the following evidence: Brady testified that she hired Lee to murder Davilla; Davilla was shot with a yellow Sears No. 8 shotgun shell from a 20-gauge shotgun; a 20-gauge shotgun and five yellow Sears 20-gauge shotgun shells were found in Lee's closet; and shortly before the murder Lee had taken the shotgun back from the friend to whom he had loaned it. See <u>Lee</u>, 383 Mass. at 508-09.

Lee has not supplemented the record with any evidence that causes the court to conclude he is factually innocent or that it is likely that no reasonable, fully informed juror would have convicted him. Therefore, he has failed to show that a fundamental miscarriage of justice will occur if this court does not decide the merits of his claims. See Bousley, 523 U.S. at 623.

As Lee has not established a basis on which this court has the authority to decide the merits of the procedurally defaulted claims, his petition is being denied.

IV.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the court must "issue or deny a certificate of appealability [("COA")] when it enters a final order adverse to the applicant." To receive a COA, Lee must make "a substantial showing of a denial of a constitutional right." See 28 U.S.C. §2253(c)(3). In other words, a petitioner must "show[] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Miller-El v. Cockrell, 537 U.S.

33

322, 338 (2003).

As explained earlier, there are tensions between the First Circuit's decision in <u>Costa</u>, 673 F.3d 16, and its earlier decision in <u>Phoenix</u>, 189 F.3d 20, concerning procedural default under §33E. This tension was discussed by Judge Woodlock in <u>Souza</u>, 2013 WL 4517978, at *5 n.3. In this case, following the reasoning of the more recent <u>Costa</u> decision, rather than the reasoning of <u>Phoenix</u>, had the effect of foreclosing review of the merits of Lee's ineffective assistance of appellate counsel claim. The default of that claim also affected the cause and prejudice analysis of the petitioner's other two claims. Accordingly, the court finds that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner," and that a COA should issue on all three claims. <u>Slack</u>, 529 U.S. at 484.

V.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1.  The Petition For A Writ of Habeas Corpus (Docket No. 1) is DENIED.

2.  A COA is ISSUED for all claims.



UNITED STATES DISTRICT JUDGE